IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HOLLIE ANNETTE        )
                                       )
   v.                      )     NO. 3:18-1299
                                       )
WILLIAM EDWARD HASLAM, et al.   )

**TO: Honorable Eli J. Richardson, District Judge**

# R E P O R T  A N D  R E C O M E N D A T I O N

By Order entered January 11, 2019 (Docket Entry No. 7), this *pro se* case was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court are numerous motions: (1) motion to dismiss filed by the City of Dickson, Tennessee and Scott Hull (Docket Entry No. 84); (2) motion to dismiss filed by the City of Franklin, Tennessee and Becky Johnson (Docket Entry No. 86); (3) motion to dismiss filed by the City of Lebanon, Tennessee and Nathan Beatty (Docket Entry No. 88); (4) motion to dismiss filed by Benton County, Tennessee and John Whitworth (Docket Entry No. 97); (5) second amended motion to dismiss filed by the State of Tennessee, the Tennessee Department of Children's Services, William Edward Haslam, Jane Bradley, Robbie Beal, Heather Jeffries, Tonya Lyles Reed, and Claudia Bonnyman (hereinafter referred to as "the State Defendants"); (6) motion for declaratory judgment and injunctive relief filed by Hollie Annette (Docket Entry No. 123); (7) notice and request for extraordinary relief filed by Hollie Annette (Docket Entry No. 197); and, (8) motion for extension of time and a temporary restraining order filed by Hollie Annette (Docket Entry No. 204).

For the reasons set out below, the undersigned respectfully recommends that the motions to dismiss be granted, that Plaintiff's three motions for various types of declaratory and injunctive relief

be denied, and that this action be dismissed as to all remaining Defendants other than Jason Scott Robbins, against whom the Clerk entered default. *See* Docket Entry No. 167.

## I. PLAINTIFF'S COMPLAINT AND PROCEDURAL BACKGROUND

Hollie Annette ("Plaintiff") filed this lawsuit *pro se* on August 29, 2018, in the United States District Court for the District of Columbia against a total of 25 Defendants. The case was subsequently transferred to this Court. Plaintiff, whose allegations indicate that she lived in Tennessee for some period of time during the relevant events, asserts that she is not currently a resident of any state but receives her mail at a post office box in Erin, North Carolina. *See* Complaint (Docket Entry No. 1) at ¶ 3. Named as Defendants are: the State of Tennessee; the Tennessee Department of Children's Services ("DCS"); the City of Lebanon; the City of Franklin; the City of Dickson; Benton County, Tennessee; and 19 individuals, the bulk of whom are state and local officials: William Edward Haslam; Jane Bradley; Robbie Beal; Heather Jeffries; Tonya Lyles Reed; Claudia Bonnyman; Judy Robbins Scott; Brenda Pierce; Lester Wayne Pierce; Jason Scott Robbins; Cheryl McAdams; John Whitworth; Scott Hull; Becky Johnson; Nathan Beatty; Charles Barry Tatum; John Gwin; and two "John Doe" individuals.

Although the Court assumes familiarity with the allegations and content of Plaintiff's 68-page complaint in light of the proceedings that have already occurred in the case,[1] a brief summary of Plaintiff's lawsuit and allegations is nonetheless included for the purposes of this Report and Recommendation.

Plaintiff states that she brings her lawsuit "for redress of grievances for the theft and holding hostage, without authority, of my sons and daughters and the ongoing and continuous malicious prosecution against me." *Id.* at ¶ 1. She seeks a declaratory judgment, injunctive relief, and damages for alleged violations of her state and federal constitutional rights and for malicious prosecution. She

---

[1] *See* Order entered May 28, 2019 (Docket Entry No. 143), and Order and Memorandum Opinion entered September 30, 2019 ( Docket Entry No. 196) ("September 30, 2019 Opinion").

specifically requests orders directing that her three children be immediately returned to her custody and orders that "the State of Tennessee, its agents, and municipalities" cease and desist from taking certain actions against her and against other "men, women, and their offspring." *Id*. at 60-67. Plaintiff asserts that federal jurisdiction exists pursuant to 28 U.S.C. 1331, 1332, and 1343, *id*. at 5, § II, and that she has exhausted all available state administrative remedies and has no recourse in the state courts for the wrongdoings about which she complains. *Id*. at ¶¶ 145-146.

Plaintiff's lawsuit is based on events that began in September 2011 when DCS employees began an investigation regarding the welfare of her children. Plaintiff alleges that during 2011 and 2012, she was the victim of wrongful and illegal activities at the hands of DCS employees Jane Bradley ("Bradley"), Heather Jeffries ("Jeffries'), and Cheryl McAdams ("McAdams") which led to the temporary removal of her son and daughter from Plaintiff's custody in December 2011, their placement with Judy Robbins Scott ("Judy Scott") and Jason Scott Robbins ("Jason Robbins"),[2] and, ultimately, their permanent removal from Plaintiff's custody.[3] *Id.* at ¶¶ 27-146.  In addition, Plaintiff alleges that she encountered further wrongdoings and illegal activities at the hand of other individuals as a result of the DCS investigation.  Among other things, Plaintiff alleges that:  (1) she was denied proper judicial and administrative proceedings before Charles Barry Tatum ("Tatum") and John Gwin ("Gwin") in 2012; (2) false criminal charges were lodged against her because of her attempts to regain custody of her children and she was subjected to illegal searches and seizures of her person and property, false arrests, and assaults in 2012 by Franklin Police Department Detective Becky Johnson ("Johnson"), Dickson Police Department Officer Scott Hull ("Hull"), and Lebanon Police Department Officer Nathan Beatty ("Beatty"); and, (3) Robbie Beal ("Beal") had her arrested and involuntarily committed for a mental health examination in 2012.  *Id*.

---

[2] Plaintiff appears to have some type of family relation to Defendants Judy Scott and Scott Robbins and asserts that Judy Scott is "my daughter's grandmother" and that Scott Robbins is a "parent."  *See* Complaint at ¶¶ 10 and 11.

[3] Plaintiff alleges that she permanently lost custody of the two children on March 15, 2012, *see* Complaint at ¶ 84, and that she has not "seen or heard from my son and daughter since May 31, 2012."  *Id*. at ¶ 144.

Plaintiff next recounts a series of events occurring in 2014 that culminated in the removal of another one of her children from her custody. *Id*. at ¶¶ 147-175 and ¶¶ 208-219. Plaintiff alleges that: (1) she was illegally seized on September 3, 2014, and was interrogated and held in custody for 21 days by two unnamed "John Doe" officers of the Benton County Sheriff's Office; (2) DCS employee Tonya Lyles Reed ("Reed") "stole" her 18 month old son from a local hospital on September 3, 2014, and thereafter filed a petition for temporary custody of the child; (3) Reed, along with foster parents Brenda Pierce and Lester Wayne Pierce, wrongfully and illegally took custody of the child; and, (4) John Whitworth ("Whitworth") signed orders in the fall of 2014 enforcing the removal of her son from her custody and directing that a "delayed birth certificate" be issued for the child. *Id*.

Plaintiff further alleges that Claudia Bonnyman ("Bonnyman') failed to act as a judicial officer with respect to several legal filings that Plaintiff made in 2016 and 2018, and acted improperly by: (1) denying Plaintiff legal remedies; (2) attempting to collect fees and information from Plaintiff; (3) failing to enforce the law; and, (4) ignoring the criminal activity of state employees. *Id*. at ¶¶ 192-207.

Plaintiff also alleges that former Tennessee Governor William Edward Haslam was notified by her of the wrongful and illegal acts that she suffered but that he failed to take any actions to remedy the wrongdoings. *Id*. at ¶¶ 176-184. She contends that the State of Tennessee, DCS, and the City of Franklin, the City of Dickson, the City of Lebanon, and Benton County, Tennessee ("hereinafter referred to collectively as the "Municipal Defendants") are responsible for the acts of their employees because of *respondeat superior,* because they are the "principles" of the individual defendants, because they failed to ensure that their employees were trained properly, because they rewarded their employees for wrongdoings, and because they received notice of the wrongful actions of their employees but failed to take steps to remedy their wrongdoing. *Id*. at ¶¶ 91-98, 103-108, 113-115, 173-175, and 186-190. She further alleges that the State of Tennessee and DCS have

received federal funding as a result of her children being "stolen" and have engaged in human trafficking. *Id*. at ¶¶ 104, 108, 188, and 190.

## II. PROCEDURAL BACKGROUND

Subsequent to the transfer of the case to this Court, the filing fee was paid and summons were issued in early 2019. Because extensive preliminary proceedings have occurred, a brief summary of some of the proceedings is included to clarify where the case stands as to the 25 Defendants.

Plaintiff twice moved unsuccessfully for the entry of default against several Defendants. *See* Denial of Entry of Default entered April 9, 2019 (Docket Entry No. 118), and Denial of Entry of Default entered May 28, 2019 (Docket Entry No. 144). Subsequent motions for the entry of default were also denied except as to Defendant Jason Scott Robbins, against whom the Clerk entered default. *See* Denial and Entry of Default entered July 18, 2019 (Docket Entry No. 167). On August 15, 2019, the Clerk denied Plaintiff's motion for default judgment against Defendant Jason Scott Robbins. *See* Docket Entry No. 188. Defendants McAdams, Judy Robbins Scott, Brenda Pierce, Lester Pierce, and the two John Does have not responded to the action and it is unclear whether they have been served with process

Defendants Charles Barry Tatum and John Gwin were dismissed from the case with prejudice upon their joint motion. *See* September 30, 2019 Opinion. On October 31, 2019, Plaintiff filed a notice of appeal from the order dismissing these two Defendants. *See* Docket Entry No. 201.

In lieu of answers, the remaining 16 Defendants filed the five pending motions to dismiss. By Orders entered April 11, 2019 (Docket Entry No. 119), and May 28, 2019 (Docket Entry No. 143), the Court rejected Plaintiff's objections that the motions were either untimely or improper responses to her complaint. By Orders entered June 28, 2019 (Docket Entry No. 158), July 1, 2019 (Docket Entry No 162), and September 30, 2019 (Docket Entry No. 196), the Court denied Plaintiff's requests to strike the State Defendants' defenses and to disqualify Tennessee Assistant Attorney

General Matt D. Cloutier and the Tennessee Attorney General's Office from representing the several State Defendants in this case.

## III.  MOTIONS TO DISMISS

Defendants seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff fails to state claims upon which relief can be granted.  Additionally, the State Defendants seek dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure based on lack of subject matter jurisdiction.

In their motions, Defendants City of Dickson, City of Franklin, City of Lebanon, Hull, Johnson, and Beatty each rely, first and foremost, on the argument that dismissal is required because Plaintiff's claims against them are untimely and are barred by the applicable one-year statute of limitations set out in Tenn.Code.Ann. § 28-3-104(a)(3).  *See* Memorandums of Law in Support (Docket Entry Nos. 85, 87, and 89).  These Defendants also argue that, to the extent Plaintiff's lawsuit is not barred by the statute of limitations, Plaintiff fails to assert cognizable claims against them.  *Id*.

In their motion to dismiss, Defendants Benton County and Whitworth also raise a statute of limitations defense and additionally argue that: (1) judicial immunity applies to the claims brought against Whitworth; (2) Plaintiff fails to set forth a municipal liability claim against Benton County; (3) no private cause of action exists for violations of the Tennessee Constitution; and, (4) any claim against the two "John Doe" defendants would be futile.  *See* Memorandum of Law in Support (Docket Entry No. 98).

In their motion to dismiss, the State Defendants raise several arguments for dismissal.  First, they assert that Plaintiff's complaint concerns matters of exclusive state-court jurisdiction and that the "domestic relations exception" to federal jurisdiction and the *Younger v. Harris* doctrine of abstention both apply and prevent this Court from adjudicating Plaintiff's claims.  *See* Memorandum of Law in Support (Docket Entry No. 160).  Second, they argue that (1) Eleventh Amendment

sovereign immunity bars Plaintiff from pursuing her claims against the State of Tennessee and DCS and bars her from pursuing damages claims against any state employees sued in their official capacities and (2) absolute judicial immunity bars Plaintiff from pursuing her claims against Defendants Beal and Bonnyman. *Id*. Third, they argue that many of Plaintiff's claims are barred by the statute of limitations and that her allegations are insufficient to state claims for relief. *Id*. Finally, they assert that Plaintiff has failed to show that she properly served process on the State of Tennessee, DCS, and, possibly, the individual State Defendants to the extent that they are sued in their individual capacities. *Id*.

Plaintiff separately responds in opposition to each motion, although many of her arguments against dismissal are essentially the same or similar. *See* Responses in Opposition (Docket Entry Nos. 100, 102, 103, 115, and 175) (hereinafter referred to collectively as "Responses"). Plaintiff raises a variety of what may be described as technical or general objections to the motions to dismiss. She also disputes that her claims are subject to the statute of limitations as argued by Defendants and contends that, even if the statute of limitations does apply, she may proceed with her claims because she is being harmed by continuing violations and because she was impeded in pursuing her claims. She further disputes that any of the jurisdictional and immunity defenses raised by Defendants are valid defenses to her claims and argues that her allegations are sufficient to state claims for relief when challenged by a motion to dismiss.

## IV. PLAINTIFF'S MOTIONS

Plaintiff has filed three motions in which she requests pre-trial injunctive and/or declaratory relief from the Court: (1) motion for declaratory judgment and injunctive relief (Docket Entry No. 123); (2) notice and request for extraordinary relief (Docket Entry No. 197); and, (3) motion for extension of time and a temporary restraining order (Docket Entry No. 204).

In her first motion, Plaintiff essentially recounts the allegations made in her complaint and also sets out a lengthy list of complaints about the actions of DCS, the State of Tennessee, social

workers, and law enforcement officials with respect to issues related to child welfare, child custody, and juvenile court proceedings. Plaintiff supports her motion with her own affidavit and documents attached thereto (Docket Entry No. 124). She contends that relief is appropriate under 28 U.S.C. §§ 2201 and 2202 and seeks 26 forms of declaratory and injunctive relief, some of which are directed at her situation and some of which are directed at the general population. A response in opposition to this motion has been filed by Defendants City of Dickson, Hull, City of Franklin, Johnson, City of Lebanon, and Beatty, *see* Docket Entry No. 140, to which Plaintiff has filed a reply. *See* Docket Entry No. 141.

In her second motion, Plaintiff recounts recent events that occurred in September 2019, when she was apparently seized by law enforcement officers in McIntosh County, Georgia and confined in the McIntosh County Jail for several days because of a detainer that had been lodged against her by an official from Benton County. It also appears that two of Plaintiff's other daughters were taken from her custody by officials in Georgia and placed in "foster care." Plaintiff asserts that she was eventually released but was shortly thereafter taken into custody again and was transported to a succession of county jails before eventually being confined in the Houston County Jail, where she states she was confined at the time she filed the motion on September 30, 2019. She asks that the Court intervene by granting her the relief requested in her original complaint and her first motion for declaratory and injunctive relief and/or by issuing orders related to the current criminal matters. A response in opposition to this motion has been filed by Benton County and John Whitworth, *see* Docket Entry Nos. 198 and 199, to which Plaintiff has filed a reply. *See* Docket Entry No. 200.

In her third motion, Plaintiff again recounts recent events and contends that these events are related to her lawsuit. Plaintiff attaches to her motion records from DCS regarding both the events at issue in her complaint and prior events. *See* Docket Entry No. 204-2. The documents appear to have been filed by the DCS Custodian of Records in the Juvenile Court of McIntosh County, Georgia. *See* Docket Entry No. 204-1. In addition to requesting additional time to (1) pursue her appeal from the dismissal of Charles Barry Tatum and John Gwin, (2) file a motion to supplement

8

her complaint, and (3) amend her complaint to identify the John Doe Defendants, Plaintiff requests that the Court issue a temporary restraining order against DCS, Benton County, and the State of Tennessee and its agents preventing them from "further impeding on my affairs in Georgia." *See* Docket Entry No. 204 at 4-5. Responses in opposition to this motion have been filed by Benton County, *see* Docket Entry No. 206, and Charles Barry Tatum and John Gwin. *See* Docket Entry No. 207.

## V. STANDARD OF REVIEW

For the purposes of reviewing the motions to dismiss brought under Rule 12(b)(6), the Court must take all the factual allegations in the complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as well as resolve all doubts in Plaintiff's favor and construe the complaint liberally in favor of the *pro se* Plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft, supra.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F.Supp.3d 874, 877 (M.D.Tenn. 2018). Moreover, factual allegations that are merely *consistent* with a defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In considering the motions to dismiss, the Court has reviewed orders and filings from relevant state court cases which have been introduced by the parties. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion."). However, the Court has not considered affidavits or other submissions from the parties of any matters outside the Complaint, the consideration of which would require the Court and parties to construe the motions as motions for summary judgment.

## VI. ANALYSIS

Defendants raise numerous defenses to the claims brought against them that are substantial and supported by well-settled law. While Plaintiff's lawsuit certainly concerns matters that are serious, the defenses require the dismissal of Plaintiff's claims. The Court has reviewed Plaintiff's responses in opposition to Defendants' motions and finds that she does not raise a persuasive rebuttal to the arguments for dismissal. Accordingly, the motions to dismiss should be granted and the moving Defendants should be dismissed from this case.

### A. Jurisdictional Issues/Abstention

At the outset, a significant jurisdictional bar exists that prevents the Court from adjudicating much of what Plaintiff has presented in her lawsuit. Plaintiff's attempt to invoke federal jurisdiction and use this federal lawsuit as a means to circumvent the child custody rulings made by the Tennessee courts is not well taken. As the party asserting federal jurisdiction, Plaintiff bears the burden of establishing that there is federal subject matter jurisdiction over her claims. *Ammons v. Ally Fin., Inc.*, 305 F.Supp.3d 818, 820 (M.D.Tenn. 2018).

Federal courts are courts of limited jurisdiction, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), and the "domestic relations exception" applies to this case. This doctrine precludes federal courts from hearing cases that "involv[e] the issuance of a divorce, alimony, or

child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015). Although the domestic relations exception "applies only to a 'narrow range' of cases," *Alexander*, 804 F.3d 1205 (quoting *Ankenbrandt*, 504 U.S. at 701), it precludes a federal court from adjudicating a claim when a plaintiff "positively sues in federal court for divorce, alimony, or child custody or seeks to modify or interpret an existing divorce, alimony, or child custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. Oct. 1, 2015) (internal citation omitted). "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981); *Chambers v. Michigan*, 473 Fed.App'x 477, 479 (6th Cir. April 5, 2012); *Partridge v. State of Ohio*, 79 Fed.App'x 844, 845 (6th Cir. 2003); *Danforth v. Celebrezze*, 76 Fed.App'x 615, 617 (6th Cir. Sept. 4, 2003).

Plaintiff's entire lawsuit is permeated by her quest to reverse the removal of her children from her custody and to gain an order from this Court directing that the children be returned to her custody. In addition to questioning the legality of the child custody decisions, Plaintiff specifically requests as part of her relief that federal orders be issued to immediately return her children to her custody and to enjoin the State of Tennessee and DCS from taking further actions against her related to the custody of her children. *See* Complaint at 60-62 and 63-67 (Prayer for Relief at Section (a), (p), and (q). Plaintiff's assertion in a response that "my complaint has nothing to do with loss of custody of any children"[4] is contradicted by the plain words of her own complaint and ignores the crux of what she has alleged in her complaint.

Interference with a state court's child custody decree generally is not within the jurisdiction of the federal courts. *See Ankenbrandt*, 504 U.S. at 703; *Hughes v. Hamann*, 23 Fed.App'x. 337 at *1 (6th Cir. 2001). Rather, state courts have exclusive jurisdiction over these matters. *Ankenbrandt*, 504 U.S. at 703-04; *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995). Accordingly, any request by Plaintiff that her children be returned to her, any request for relief that alters or otherwise impacts

---

[4] *See* Docket Entry No. 175 at 5.

the state juvenile court and child custody proceedings, and any request for a declaration or decision from this Court regarding the custody of her children falls squarely within the domestic relations exception and cannot be heard by this Court. Furthermore, the Court finds that any claims by Plaintiff for damages that arise from the state child custody proceedings are so inextricably intertwined with the proceedings themselves that they are likewise excluded from being entertained by this Court. Lawsuits of the type brought by Plaintiff have repeatedly been dismissed by other courts in this Circuit on the basis of the domestic relations exception. *See Mensah v. St. Joseph Cty. Family Indep. Agency*, 187 F.3d 636 (6th Cir. 1999) (federal court correctly declined to exercise jurisdiction over the plaintiff's civil rights claims for monetary and injunctive relief because they involved domestic relations concerning the custody of his children); *LeBlanc v. Hagan*, 2017 WL 2779490 (W.D.Ky. June 27, 2017) (the domestic relations exception barred the plaintiff's claims for damages and injunctive relief based on allegations that her constitutional rights were violated by an investigation into dependency, abuse, and neglect allegations that led to the removal of her children); *Stone v. Child Prot. Servs.*, 2016 WL 4821371 (W.D.Ky. Sept. 9, 2016) (Plaintiff's claims for monetary, injunctive, and declaratory relief based on alleged violations of his constitutional rights were dismissed under domestic relations exception because he was actually challenging the state family court's child custody proceeding."); *Johnson v. Collins*, 2015 WL 4546794 (E.D.Ky. July 28, 2015), *aff'd* (Feb. 2, 2016) (the domestic relations exception required the dismissal of the plaintiff's case in which she alleged that her children had been improperly and illegally removed from her custody and sought injunctive relief and punitive damages).

Additionally, while not entirely clear from the record before the Court,[5] it appears that state court proceedings regarding Plaintiff's children may still be on-going. To the extent that there are on-going proceedings, the doctrine of abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1981),

---

[5] Although the State Defendants contend that Plaintiff's children are the subject of ongoing dependency and neglect proceedings in the Wilson County Juvenile Court and the Benton County Juvenile Court, *see* Docket Entry No. 160 at 5, the record of court proceedings that they submitted in support of their motion only indirectly reflects this and is not from the juvenile court proceedings themselves.

"requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008). The Sixth Circuit has enunciated three factors used to determine whether to abstain from hearing a case pursuant to *Younger*: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill*, 511 F.3d at 643. The Sixth Circuit has recognized that the realm of domestic relations is an important state interest. *Kelm*, 44 F.3d at 420 ("These traditional domestic relations issues qualify as important state issues under the second element of *Younger*."). Plaintiff's recitation of the litigation in which she has been involved shows that she has had an adequate opportunity in the state proceedings to raise any constitutional challenges she has regarding the child custody issues. Her dissatisfaction with the results of the state court proceedings does not render them inadequate.

**B. Eleventh Amendment Immunity**

Plaintiff's claims against the State of Tennessee and DCS are barred by the Eleventh Amendment and, thus, subject to dismissal. The Eleventh Amendment prohibits nonconsenting states from being sued by private individuals in federal court. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). As the Sixth Circuit succinctly stated in *Thiokol Corp. v. Dep't. of Treasury, State of Mich, Revenue Div.*, 987 F.2d 376 (6th Cir. 1993):

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

987 F.2d at 381. *E.g. Tennessee v. Lane*, 541 U.S. 509, 517 (2004); *Pennhurst State Schs. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). As an agency of the State of Tennessee, DCS is entitled to the protection of Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 100.

This protection from suit exists unless the United States Congress has validly abrogated the immunity or the state has waived its sovereign immunity and consented to suit. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999); *Alden v. Maine*, 527 U.S. 706 (1999). It is well established that Congress has not overridden a state's Eleventh Amendment immunity with respect to civil rights claims, *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013), and the State of Tennessee has not consented to waive its immunity to such actions. *Berndt v. State*, 796 F.2d 879, 881 (6th Cir. 1986); *Ragan v. Tennessee*, 2014 WL 648287 at *1 (M.D.Tenn. Feb. 19, 2014) (Campbell, J.). Plaintiff has not shown any basis which supports a conclusion that the State of Tennessee and DCS have waived their Eleventh Amendment immunity in this case. Her arguments that the State of Tennessee and DCS have consented to being sued in this case are self-serving and meritless.[6]

To the extent that the individual Defendants who are employees of the State of Tennessee or DCS have been sued for damages in their official capacities, they likewise are entitled to the protection of Eleventh Amendment immunity. *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 Fed.App'x 646, 654 (6th Cir. 2010) (*quoting Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71(1989)). Accordingly, Plaintiff's damage claims against the individual State of Tennessee and DCS Defendants who are sued in their official capacities are subject to dismissal.

## C. Judicial Immunity

Defendants Whitworth, Beal, and Bonnyman raise a sound legal defense by their assertion of absolute judicial immunity from Plaintiff's claims. Judicial officers are absolutely immune from civil suits brought against them that are based upon their judicial actions. *Mireles v. Waco*, 502 U.S.

---

[6] *See* Docket Entry No. 175 at 10-11 and 19-20.

9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). Absolute judicial immunity is an immunity from suit, not merely the assessment of damages, and is not overcome by allegations of bad faith or malice on the part of the defendant. *Forrester v. White*, 484 U.S. 219, 227 (1988); *Mireles*, 502 U.S. at 11; *Leech*, 689 F.3d at 542. Absolute immunity is overcome only if 1) the actions at issue were not taken in the judge's judicial capacity and are, thus, not judicial in nature, or 2) the actions at issue were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.[7]

The Court takes judicial notice of the fact that Defendants Whitworth, Beal, and Bonnyman were each, at all relevant times, judicial officers within the State of Tennessee. Plaintiff's argument that Defendants are not entitled to judicial immunity because she has alleged that they were "contractors" or administrative hearing officers has already been rejected by the Court in addressing the same argument brought by Plaintiff in her opposition to the dismissal of Defendants Tatum and Gwin. *See* September 30, 2019 Opinion at 16. Likewise, Plaintiff's contention that Defendants are not judicial officers under the Tennessee Constitution because they have not executed the required oath of office is meritless. Plaintiff has offered no case law supporting her position, and the Court finds persuasive the case law that supports a contrary position to that advanced by Plaintiff. *See Jurich v. Campbell*, 2014 WL 109489 at *2 (E.D.Mich. Jan. 13, 2014); *Thompson v. Marietti*, 2013 WL 3818887 at *2 (W.D.Mich. July 23, 2013), aff'd (May 15, 2014). *See also Bollin v. State*, 486 S.W.2d 293, 295 (noting that the Tennessee Supreme Court in *Sanders v. Metcalf*, 1 Tenn. Ch. 419 (1873) "held that the provision for a special judge taking an oath is merely directory and, as far as the validity of his orders, he could act without taking the oath at all."). Finally, Plaintiff's contentions that (1) Defendants are not actually judicial officers but are part of military tribunals because the "Reconstruction Acts" have never been repealed or (2) Defendants are acting as

---

[7] Tennessee provides for judicial immunity under state law that mirrors the immunity provided under federal law. *See Harris v. Witt*, 552 S.W.2d 85 (Tenn. 1977); *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974).

"privateers" because the State of Tennessee is a privately held corporation are legally baseless and nonsensical.[8]

Any fair reading of Plaintiff's complaint shows that the conduct that forms the basis for her claims against Defendants Whitworth, Beal, and Bonnyman is conduct that was judicial in nature and which took place while they were acting within their jurisdiction. Plaintiff has not raised any arguments against the application of judicial immunity that are persuasive and are supported by sound legal authority. Plaintiff's dissatisfaction with the manner in which the proceedings were conducted and her attempts to discount the validity of those proceedings simply does not negate the shield of judicial immunity that entitles Defendants Whitworth, Beal, and Bonnyman to dismissal of her claims against them.

## D.  The Statute of Limitations Defense

The statute of limitations defense raised by Defendants has merit and bars Plaintiff's claims against all Defendants other than Defendant Bonnyman. By any fair reading of Plaintiff's complaint, the claims she brings against these Defendants are based upon events occurring in 2011, 2012, and 2014. However, Plaintiff did not file her lawsuit until August 29, 2018, no less than four years and as much as seven years after the events at issue.

The pertinent question is whether Plaintiff brought her lawsuit against Defendants within the time period provided by the applicable statute of limitations. As stated by the United States Supreme Court:

> Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

*United States v. Kubrick*, 444 U.S. 111, 117 (1979).

---

[8] *See* Docket Entry No. 175 at 14-15.

In her complaint, Plaintiff does not set out specifically identified legal claims for her causes of action. *See* Complaint at 34-60. However, she clearly alleges that Defendants' conduct violated the rights secured to her by the United States Constitution. *Id*. Such allegations are for all purposes claims brought under 42 U.S.C. § 1983, which provides a plaintiff with a cause of action against anyone who has, under color of state law, deprived another of a right, privilege, or immunity secured by the Constitution and the laws of the United States. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). Indeed, the statutory enactment in Section 1983 is the exclusive remedy for alleged federal constitutional violations by state actors. *Wynn v. Morgan*, 861 F.Supp. 622, 630 (E.D.Tenn. 1994); *Roberson v. City of Goldboro*, 564 F.Supp.2d 526, 529 (E.D.N.C. 2008) (Section 1983 provides the exclusive federal damages remedy for violation of federally-guaranteed rights when suit is brought against a state actor). To the extent that Plaintiff argues that she is not bringing claims under 42 U.S.C. § 1983 and that her claims are for violations of the U.S. Constitution and/or inalienable rights, the Court has already addressed and rejected this argument in ruling on her objections to the recommendation for dismissal of Defendants Tatum and Gwin. *See* September 30, 2019 Opinion at 11 and 12 n.10.

The statute of limitations to be applied to constitutional claims brought under 42 U.S.C. § 1983 is the state statute of limitations applicable to personal injury actions under the law of the state in which the alleged Section 1983 claim arises, *Haley v. Clarksville-Montgomery Cty. School Syst.*, 353 F.Supp.3d 724, 730 (M.D.Tenn. 2018), and it is well settled that the one-year statute of limitations that is set out in Tenn. Code. Ann. § 28-3-104(a)(3) applies to claims brought under 42 U.S.C. § 1983 that arise in Tennessee. *See Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 547 (6th Cir. 2000); *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). Accordingly, Plaintiff's claims seeking vindication of violations of her federal constitutional rights must have been brought within one year of when the claims accrued. *See Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Merriweather*, *supra*.

Plaintiff also appears to assert a variety of common-law claims under Tennessee law for "breach of fiduciary duty," for "extreme and outrageous conduct [that] shocks the conscience" and false arrest, and for malicious prosecution. *See* Complaint at 42-44. Assuming that a breach of fiduciary duty claim exists under Tennessee law based upon the facts alleged in this case, Tenn. Code. Ann. § 48-18-601 provides for a one-year statute of limitations for such a claim. With respect to Plaintiff's assertion of what appear to be state law claims for false arrest, malicious prosecution, and outrageous conduct, the one-year statute of limitations for personal torts that is set out in Tenn. Code Ann. § 28-3-104(a) applies to these claims. *See Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir. 1983); *Ryan v. Tennessee*, 2008 WL 11394168 *1 (M.D.Tenn. 2008 (Echols J.); *Jones v. Dorrough*, 2005 WL 954743 at *8 (Tenn.Ct.App. 2005).[9]

Plaintiff's claims accrued and the statute of limitations period began to run when she knew or had reason to know of the injuries which are the basis of her action. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016); *Roberson, supra*; *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Wyatt v. A–Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). Even a generous reading of Plaintiff's complaint shows that she was clearly aware in 2011, 2012, and 2014 of Defendants' conduct and the injuries that she contends she suffered because of their conduct. However, her claims were brought well beyond the applicable statutes of limitations and are therefore untimely.

None of Plaintiff's arguments against the application of the statute of limitations defense compels a different conclusion. Plaintiff appears to argue that Tenn.Code.Ann. § 28-3-104(a) does not apply to her because it is a "private copyrighted statute of the State of Tennessee of which I am

---

[9] Plaintiff appears to have abandoned any claims for violations of the Tennessee Constitution. *See* Docket Entry Nos. 100, 102, and 103 at ¶ 12. Such an abandonment would be appropriate because Tennessee Courts have found that no private cause of action exists to pursue such claims. *See Siler v. Scott*, 2019 WL 2306932 at *11, n. 2 (Tenn.Ct App. May 30, 2019); *Odom v. Claiborne Cty., Tennessee*, 498 S.W.3d 882, 889 (Tenn.Ct.App. 2016); *Irons v. City of Bolivar*, 897 F.Supp.2d 665, 669 (W.D.Tenn. 2012).

not an employee of or contractor or, nor do I have a contract with them."[10]  This argument is nonsensical, and Plaintiff offers no actual legal authority for the position that her claims do not fall within the scope of the statute of limitations set out in Section 28-3-104(a).

Plaintiff argues that she faced "impediments" that should excuse her untimely claims.  *See* Docket Entry Nos. 100, 102, and 103 at ¶ 13(c).  Specifically, she alleges that she was prevented from readily addressing Defendants' wrongful conduct because her laptop, cell phone, and car were seized and not returned to her and because she was confined in jail for periods of time.  She also contends that she filed counterclaims, grievances, notices, criminal affidavits, and grand jury petitions that were ignored and that she has unsuccessfully pursued "different judicial and administrative remedies in a variety of ways to procure the release of my son and daughter to me."  *Id*.

Plaintiff's argument, although not stated as such, is essentially an argument that equitable tolling should apply.  The doctrine of equitable tolling typically applies only "when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond the litigant's control."  *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) *(quoting Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014) ); *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003).  Equitable tolling is to be applied sparingly, *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001), and Plaintiff bears the burden of demonstrating that she is entitled to the application of equitable tolling. *Jackson*, 751 F.3d at 718-19; *McClendon v. Sherman*, 328 F.3d 490, 494 (6th Cir. 2003).

Plaintiff fails to meet this burden.  First, Plaintiff's own argument includes an assertion that she pursued counterclaims, grievances, notices, criminal affidavits, grand jury petitions, and other administrative and judicial remedies about the alleged removal of her children and the wrongdoings she alleges she suffered.  Thus, regardless of the alleged "impediments," she was able to litigate and take steps seeking redress for the alleged wrongdoings.  Further, Plaintiff fails to assert any actual

---

[10] *See* Docket Entry Nos. 100 and 102 at ¶ 20; Docket Entry No. 103 at ¶ 21.

time period during which she was prevented from pursuing her claims against Defendants. Even if the Court assumes as true that the actions attributed to Defendants impeded Plaintiff's ability to pursue her claims for some unspecified period of time, she fails to explain why several years passed before she filed her lawsuit or why her delay in pursuing her claims against Defendants should be excused. Moreover, neither Plaintiff's *pro se* status nor a lack of knowledge of the legal basis for her claims are sufficient to warrant equitable tolling. See *Cheatom v. Quicken Loans*, 587 Fed.App'x 276, 281 (6th Cir. 2014); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Godspower v. Arnold*, 2014 WL 4347619 at *2 (M.D.Tenn. Aug.29, 2014) (Trauger, J.).

Finally, Plaintiff argues in each of her responses that her injuries and the damages caused by Defendants are "continuous and ongoing" and, thus, her claims are not limited to events occurring in 2011, 2012, and 2014. However, this argument has already been heard and rejected by the Court in the stance of determining a motion to dismiss filed by other defendants in this case. *See* September 30, 2019 Opinion at 15. As previously noted by the Court, the accrual date for a cause of action does not change as a result of continuing consequential damages. *Kwas v. Intergraph Gov't Solutions*, 2016 WL 11481724,at *4 (E.D.N.Y. June 23, 2016). Plaintiff's claims against Defendants are based upon discrete acts that occurred several years ago and are not based upon ongoing events that would constitute a continuous violation. Plaintiff has not alleged any facts in her complaint about any misconduct that falls within the statute of limitations period. In such a situation, a continuous violation does not exist. *See Mitchell v. Taylor*, 2018 WL 4162255 at *3 (6th Cir. Apr. 16, 2018).

In the end, Plaintiff has not shown any factual or legal basis upon which to conclude that her claims are not barred by the statute of limitations.

**E. Municipal Liability**

To the extent that Plaintiff's claims against the Municipal Defendants are based upon theories that the Municipal Defendants bear responsibility for the action of the individual Defendants because

of derivative and *respondeat superior* liability[11] or because of lack of training, such claims suffer from the same statute of limitations bar as the underlying claims against the individual Defendants. Additionally, pursuing municipal liability claims requires factual allegations of actual wrongdoing on the part of the <u>municipal entity</u> that show that the municipal entity was the moving force behind the violations at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Polk Cnty. v. Dodson*, 454 U.S. 312, 326. A municipal liability claim cannot be based on a conclusory allegation of a lack of training or of notice to the municipal entity and a failure to remedy. Plaintiff's complaint is simply not sufficient to state claims for relief against the Municipal Defendants.

## F. Other Arguments for Dismissal

The grounds for dismissal set out and analyzed in the preceding sections are significant and require dismissal of Plaintiff's claims against Defendants. For this reason, the Court declines to address the State Defendants' argument for dismissal based on lack of service of process. Additionally, because the jurisdictional, immunity, and statute of limitations defenses require dismissal of the entirety of Plaintiff's claims against Defendants, the Court declines to address at this time any other arguments made by Defendants that her allegations do not state claims upon which relief can be granted. Given the breadth of the allegations made by Plaintiff, parsing out specific allegations that do not state claims upon which relief can be granted is not an efficient use of judicial resources in light of the more comprehensive defenses to her lawsuit that support the motions to dismiss.

---

[11] Regardless of the bar to her claims created by the statute of limitations bar, any claim against the Municipal Defendants based upon a theory of *respondeat superior* fails because this theory of liability does not support a claim under Section 1983. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

## G. Plaintiff's Motions

Plaintiff's three motions seeking pre-trial injunctive and/or declaratory relief from the Court fail. As set out herein, Plaintiff's claims against Defendants require dismissal for several reasons. Upon the dismissal of these claims, Plaintiff's motions seeking preliminary relief are rendered moot. A necessary showing by the party moving for the issuance of preliminary injunctive relief is that the moving party has a strong or substantial likelihood of success on the merits of her action, *NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989), and Plaintiff's inability to show any likelihood of success on the merits of her claims against Defendants warrants the dismissal of her requests for injunctive relief without consideration of any other factors. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

## H. Remaining Defendants

Defendants McAdams, Judy Robbins Scott, Brenda Pierce, Lester Pierce, and the two John Doe Defendants ("six Remaining Defendants") have not appeared in the action and the status of service of process upon them is not clear. In non-dispositive motions that are also pending before the Court, Plaintiff outlines her attempts to serve them with process and seeks either extensions of time to serve them, orders permitting "alternative" service of process upon them, or orders deeming them to have been served with process. *See* Docket Entry Nos. 170 and 176.

While Plaintiff may argue that good cause exists under Rule 4(m) of the Federal Rules of Civil Procedure to excuse her failure to have timely served process upon the six Remaining Defendants, there, nonetheless, appears to be a lack of good cause for further proceedings to occur with respect to the claims against the six Remaining Defendants. The claims against them that are set out in Plaintiff's complaint, like all of her claims other than the claims against Defendant Bonnyman, are claims that arose several years ago, and the statute of limitations defense raised by the Defendants who have filed motions to dismiss applies as equally to the six Remaining Defendants. It is apparent from the face of Plaintiff's own complaint that her claims against the six

Remaining Defendants accrued well outside the one year statute of limitations for bringing her claims against them. The same analysis of the statute of limitations and of Plaintiff's arguments against the application of the statute of limitations that is set out above in this Repot Recommendation applies to the claims brought against the six Remaining Defendants.

Although a statute of limitations defense is an affirmative defense that ordinarily must be raised by a defendant, the defense may nonetheless be raised *sua sponte* by the Court in circumstances when it clearly applies and when the plaintiff is put on notice that the timeliness of his or her claims is at issue. *See In Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 407 (6th Cir. 1999) (summary judgement was appropriately granted *sua sponte* to non-moving defendant when other parties' motions put the plaintiff on notice that he had to come forward with evidence showing that the statute of limitations did not bar his claim); *Mischler v. Bevin*, 2019 WL 2644639 at *3 (6th Cir. May 8, 2019) (district court properly *sua sponte* dismissed plaintiff's claims because a meritorious affirmative defense based upon the applicable statute of limitations was obvious from the face of the complaint) (internal quotations omitted); *Thomas v. Mahoning Cty. Jail*, 2017 WL 3597428 at *2 (6th Cir. Mar. 21, 2017) (*sua sponte* dismissal based on statute of limitations was appropriate when the defense was raised by other parties in their motions to dismiss and for summary judgment); *Lane v. Russell*, 178 F.3d 1295, 1999 WL 196528 at *2 (6th Cir. 1999) (even though statute of limitations defense was not raised by the defendants and was raised *sua sponte* by the magistrate judge, the plaintiff was not materially prejudiced because of his opportunity to contest the matter though objections to the report and recommendation).

In the instant case, the statute of limitations defense clearly applies and there would be no purpose served in allowing this case to go forward against the six Remaining Defendants on claims that are clearly barred by the defense and are subject to dismissal. Accordingly, the claims against the Six Remaining Defendants should be dismissed from this action and these Defendants likewise be dismissed unless Plaintiff, through objections to this Report and Recommendation, shows cause for why they should not be dismissed based upon the statute of limitations defense.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that:

1) the motion to dismiss filed by the City of Dickson and Scott Hull (Docket Entry No. 84), the motion to dismiss filed by the City of Franklin and Becky Johnson (Docket Entry No. 86), the motion to dismiss filed by the City of Lebanon and Nathan Beatty (Docket Entry No. 88), the motion to dismiss filed by Benton County and John Whitworth (Docket Entry No. 97), and the second amended motion to dismiss filed by the State of Tennessee, the Tennessee Department of Children's Services, William Edward Haslam, Jane Bradley, Robbie Beal, Heather Jeffries, Tonya Lyles Reed, and Claudia Bonnyman be GRANTED;

2) the City of Dickson, Scott Hull, the City of Franklin, Becky Johnson, the City of Lebanon, Nathan Beatty, Benton County, John Whitworth, the State of Tennessee, the Tennessee Department of Children's Services, William Edward Haslam, Jane Bradley, Robbie Beal, Heather Jeffries, Tonya Lyles Reed, and Claudia Bonnyman be DISMISSED WITH PREJUDICE;

3) Plaintiff's motion for declaratory judgment and injunctive relief (Docket Entry No. 123), request for extraordinary relief (Docket Entry No. 197), and motion for a temporary restraining order (Docket Entry No. 204) be DENIED; and,

4) Plaintiff's motion for alternative service and/or extensions of time to complete service of process (Docket Entry Nos. 170 and 176) be DENIED and that Defendants Cheryl McAdams, Judy Robbins Scott, Brenda Pierce, Lester Pierce, and the two John Doe Defendants be DISMISSED.[12]

The Clerk is directed to send copies of all orders entered in this case to the *pro se* Plaintiff and to any other *pro se* party by regular, first class mail (only), unless otherwise directed by the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific

---

[12] If this Report and Recommendation is adopted, the only Defendant who would remain in the case would be Jason Scott Robbins, against whom the Clerk entered default. *See* Docket Entry No. 167.

portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge